UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

COLLETTE CAMPBELL,                                      NOT FOR PUBLICATION

                            Plaintiff,                  **MEMORANDUM & ORDER**
                                                        11-CV-2827 (MKB)
            v.

NEW YORK CITY TRANSIT AUTHORITY,

                            Defendant.
----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Collette Campbell, currently proceeding *pro se*, commenced the

above-captioned action on June 10, 2011, against the New York City Transit Authority ("Transit

Authority"), alleging claims of gender discrimination, age discrimination, disability

discrimination, failure to accommodate, retaliation and creation of a hostile work environment in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"),

the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34 ("ADEA") and the

Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 *et seq.* ("ADA").  Plaintiff also

brought claims for "institutional discrimination" and "institutional retaliation," premised on

gender, age and disability.  Defendant moved for summary judgment on all claims, and by

Memorandum and Order dated March 26, 2015, the Court granted Defendant's motion (the

"March 26, 2015 Decision").  The Clerk of Court entered judgment on March 26, 2015.

(Mar. 26, 2015 J., Docket Entry No. 92.)  On April 6, 2015, Plaintiff moved for relief from the

judgment pursuant to Rule 60(b)(1), (3) and (6) of the Federal Rules of Civil Procedure.[1]  On

---

[1]  Plaintiff styles her motion as seeking relief from a final judgment or order pursuant to
Rule 60(1), (3) and (6) of the Federal Rules of Civil Procedure, on the grounds of mistake or

April 8, 2015, Plaintiff appealed to the Second Circuit, which appeal has been stayed pending resolution of Plaintiff's motion. (*See* Case No. 15-1103, Docket Entry No. 11.) For the reasons set forth below, Plaintiff's motion is denied.

## I. Background

The Court assumes familiarity with the facts as set forth more fully in the March 26, 2015 Decision. *Campbell v. N.Y.C. Transit Auth.*, 93 F. Supp. 3d 148, 155–63 (E.D.N.Y. 2015). The Court provides a summary of the pertinent facts.

Plaintiff was employed with the Transit Authority from October of 1983 through August of 2011. (Def. 56.1 ¶¶ 25, 28; Pl. 56.1 ¶¶ 25, 28; Pl. Aff. in Opp'n to Mot. for Summ. J. ("Pl. Aff.") ¶ 2.) In March of 2009, Plaintiff was a supervisor at the Utica Avenue Station on the A subway line ("Utica Station"), and several of her subordinates complained about her regular uniform inspection. (Def. 56.1 ¶¶ 48, 63–64; Pl. 56.1 ¶¶ 48, 63–64.) At a meeting called by Superintendent Justin Hyppolyte, one of Plaintiff's subordinates, Jimmy Davenport, asked Plaintiff why she supervised "like that" and suggested that her supervision style was the reason she had gray hair. (Def. 56.1 ¶¶ 65–67; Pl. 56.1 ¶¶ 65–67.)

A few months later, on August 6, 2009, Plaintiff and Davenport had an altercation after Davenport tried to report to work on a day he was not scheduled to work, and Plaintiff tried to send him home. (Def. 56.1 ¶¶ 78–84; Pl. 56.1 ¶¶ 78–84.) Davenport called Plaintiff a "gray haired bitch" and told her that he was going to "fuck her up." (Def. 56.1 ¶¶ 9–10, 97; Pl. 56.1

---

excusable neglect, fraud by an opposing party or "any other reason that justifies relief." (Pl. Mot. 1.) To the extent Plaintiff challenges the Court's decision on the grounds that the Court failed to adequately address Plaintiff's arguments, the Court will consider Plaintiff's motion as a motion to vacate the judgment entered by the Clerk of the Court on March 26, 2015 and to reconsider its March 26, 2015 Decision. *See Bey v. City of New York*, No. 13-CV-9103, 2015 WL 5473155, at *1 (S.D.N.Y. Sept. 16, 2015) (construing plaintiff's motion for relief from court's order as a motion for reconsideration).

¶¶ 9–10, 97.) In response, Plaintiff screamed at Davenport. (Def. 56.1 ¶¶ 98, 100; Pl. 56.1 ¶¶ 98, 100.) After the incident, Plaintiff called the station command, her union representative, her supervisor and the police, and requested medical attention, filed a complaint against Davenport with her supervisor Denise Gregg, and faxed another complaint to Hyppolyte. (Def. 56.1 ¶¶ 101–02, 106, 111, 116; Pl. 56.1 ¶¶ 101–02, 106, 111, 116.) Plaintiff was "held out of service" and instructed to report to Cynthia Davis in the Office of Labor Relations the following morning. (Def. 56.1 ¶¶ 116–18; Pl. 56.1 ¶¶ 13, 116–18.) Plaintiff was taken to the hospital where she was examined and released. (Def. 56.1 ¶¶ 13, 120–21; Pl. 56.1 ¶¶ 13, 120–21.)

Plaintiff maintains that the stress and trauma of the incident caused her post-traumatic stress disorder warranting workers' compensation coverage. (Def. 56.1 ¶ 15; Pl. 56.1 ¶¶ 15a–c, 18.) Defendant opposed her application for workers' compensation on the grounds that there was no "accident" within the meaning of the workers' compensation law, but Plaintiff was ultimately awarded workers' compensation benefits for the period during which she remained out of work, from approximately August 7, 2009, through April 5, 2010. (Def. 56.1 ¶¶ 138, 142; Pl. 56.1 ¶¶ 138, 142.) During her leave of absence, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging claims of sex, age and disability discrimination, as well as a retaliation claim. (Def. 56.1 ¶¶ 19–20; Pl. 56.1 ¶¶ 19–20.)

Both Plaintiff and Davenport were served with disciplinary charges as a result of the August 6, 2009 incident. (Def. 56.1 ¶ 12; Pl. 56.1 ¶ 12.) Plaintiff did not testify at Davenport's disciplinary proceedings because she was still out of work. (Def. 56.1 ¶ 131; Pl. 56.1 ¶ 131.) Accordingly, Davenport's disciplinary charge was resolved while Plaintiff was absent from work. (Def. 56.1 ¶¶ 16, 131; Pl. 56.1 ¶¶ 16, 131.) After Plaintiff returned to work, on July 6, 2010, Defendant held an arbitration hearing to review her disciplinary charge as a result of the

August 6, 2009 incident. (Def. 56.1 ¶ 145; Pl. 56.1 ¶ 145.) The charges were dismissed by the arbitrator. (Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16c.)

During the winter of 2009, the Transit Authority reviewed the sick leave of various supervisors, including Plaintiff. (Aff. of Denise Washington ("Washington Aff.") ¶¶ 4–7, Docket Entry No. 80.) As a result of the investigation, several supervisors, including Plaintiff, were served with disciplinary charges for chronic absenteeism. (Washington Aff. ¶ 7.) Plaintiff's charge indicated that she was sick without pay on six occasions, totaling thirty-one days over a period of nineteen weeks. (Def. 56.1 ¶ 149; Disciplinary Notification for Collette Campbell dated Jan. 11, 2010, Def. Ex. R, annexed to Def. Mot. for Summ. J. ("Jan. 11, 2010 Notice"), Docket Entry No. 80–19; Pl. Confidential Ex. at TA-2–TA-6, Docket Entry No. 75-4.) Plaintiff contested the charge during meetings on January 14, 2011, and March 9, 2011. (Jan. 11, 2010 Notice.) In May or June of 2011, Plaintiff informed the Transit Authority that she intended to retire and she formally retired on August 29, 2011. (Pl. Aff. ¶ 2; Pl. Dep. 14:10–15:13.) Because the disciplinary charge for chronic absenteeism was pending when Plaintiff retired, it was not resolved. (Aff. of Cynthia Davis ¶ 15.)

## II. Discussion

### a. Standards of review

#### i. Rule 60(b)

Federal Rule of Civil Procedure 60(b) provides for relief from a final judgment, order, or proceeding in the case of "(1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). "Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the

finality of judgments." *Reese v. Bahash*, 574 F. App'x 21, 23 (2d Cir. 2014) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). Such a motion "must be made within a reasonable time," *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (citing Fed. R. Civ. P. 60(c)), and cannot be used "as a substitute for appeal." *Stevens v. Schneiderman*, No. 05-CV-10819, 2011 WL 6780583, at *4 (S.D.N.Y. Dec. 23, 2011) (quoting *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009)). "A Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." *Maldonado v. Local 803 I.B. of Tr. Health & Welfare Fund*, 490 F. App'x 405, 406 (2d Cir. 2013) (citing *Zerman v. Jacobs*, 751 F.2d 82, 85 (2d Cir. 1984)).

Each of the first five subsections of the rule addresses a particular circumstance under which a party can obtain relief from a final judgment. *See Dugan v. United States*, No. 11-CV-3973, 2015 WL 5244341, at *3 (E.D.N.Y. Sept. 8, 2015). Generally, Rule 60(b)(1) is invoked to provide relief from a final judgment or order due to the mistake, inadvertence, surprise or excusable neglect "of a party or his representatives," and other provisions of the Federal Rules, including Rule 59(e) of the Federal Rules of Civil procedure, are used to challenge a decision of the district court. *Turner v. Vill. of Lakewood, N.Y.*, 594 F. App'x 25, 25 (2d Cir. 2015) (quoting *Montco, Inc. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754, 759 (2d Cir. 1981)).

"Rule 60(b)(3) motions 'cannot serve as an attempt to relitigate the merits' and may only be granted when the movant establishes a material misrepresentation or fraud by 'clear and convincing evidence.'" *ACE Investors, LLC v. Rubin*, 561 F. App'x 114, 117 (2d Cir. 2014) (quoting *Fleming v. N.Y. Univ.*, 865 F.2d 478, 484 (2d Cir. 1989)); *see also Schlafman v. State Univ. of N.Y., Farmingdale*, 541 F. App'x 91, 93 (2d Cir. 2013) ("Relief under Rule 60(b)(3) . . . 'cannot be granted absent clear and convincing evidence of material misrepresentations' or other

misconduct." (quoting *Fleming*, 865 F.2d at 484 )).  Furthermore, a motion under subsection

(b)(3) may fail if "the proffered evidence is irrelevant to the ultimate outcome."  *Latimore v.*

*NBC Universal Inc.*, 489 F. App'x 521, 521 (2d Cir. 2013) (citing *Fleming,* 865 F.2d at 485).

　　　"Rule 60(b)(6) relief is only available if Rules 60(b)(1) through (5) do not apply."  *ISC*

*Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 109 (2d Cir. 2012); *Stevens*, 676 F.3d at 67

("Rule 60(b)(1) and Rule 60(b)(6) are 'mutually exclusive,' such 'that any conduct which

generally falls under the former cannot stand as a ground for relief under the latter.'" (quoting *In*

*re Emergency Beacon Corp.*, 666 F.2d at 760)).  In order to qualify for Rule 60(b)(6) relief, a

plaintiff must also demonstrate either "extraordinary circumstances, or extreme hardship."

*DeCurtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (quoting *Harris v. United States*,

367 F.3d 74, 81 (2d Cir. 2004)); *see also Stevens*, 676 F.3d at 67 (noting that "courts require the

party seeking to avail itself of [Rule 60(b)(6)] to demonstrate that 'extraordinary circumstances'

warrant relief" (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988))).

### ii. Reconsideration

　　　The standard for granting a motion for reconsideration is strict, and "[r]econsideration

will generally be denied unless the moving party can point to controlling decisions or data that

the court overlooked — matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court."  *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.,*

*Ltd.*, --- F. App'x ---, ---, 2015 WL 5999215, at *3 (2d Cir. 2015) (quoting *Shrader v. CSX*

*Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *Bank of Am. Nat. Ass'n v. AIG Fin. Prods. Corp.*,

509 F. App'x 24, 27 (2d Cir. 2013) ("The standard for granting such a motion is strict . . . ."

(quoting *Shrader*, 70 F.3d at 257)), *as amended* (Apr. 5, 2013); *see also* Local Civ. R. 6.3 (The

moving party must "set[] forth concisely the matters or controlling decisions which counsel

believes the Court has overlooked."); *Smith v. N.Y.C. Dep't of Educ.*, 524 F. App'x 730, 734 (2d Cir. 2013) ("To warrant reconsideration, a party must 'point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" (quoting *Shrader*, 70 F.3d at 257)).

It is thus "well-settled" that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)), *as amended*, (July 13, 2012). A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." *Simon v. Smith & Nephew, Inc.*, 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014) (citation and internal quotation marks omitted). In order to prevail on a motion for reconsideration, "the moving party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." *Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (citations and internal quotation marks omitted); *see also Stoner v. Young Concert Artists, Inc.*, No. 11-CV-7279, 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because a party is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial resources." (alteration, citations and internal quotation marks omitted)); *Henderson v. City of New York*, No. 05-CV-2588, 2011 WL 5513228, at *1 (E.D.N.Y. Nov. 10, 2011) ("In order to have been 'overlooked,' the decisions or data in question must have been put before [the court] on the underlying motion . . . and which, had they been considered, might have reasonably

altered the result before the court." (citations and internal quotation marks omitted)).

   **b.    Plaintiff's motion to vacate the judgment and for reconsideration**

In the March 26, 2015 Decision, the Court granted Defendant's motion for summary judgment dismissing all of Plaintiff's claims.  With respect to the hostile work environment claims, the Court determined that Plaintiff could not establish a claim under either Title VII or the ADEA because she failed to provide evidence sufficient for a jury to infer that her work environment was objectively hostile.  *Campbell*, 93 F. Supp. 3d at 165 (citing *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247, 2013 WL 1232355, at *18 (E.D.N.Y. Mar. 26, 2013) ("Plaintiff has not presented any evidence from which a jury could infer that his work environment was objectively hostile, let alone permeated with any age or disability discriminatory animus.")).

The Court also determined that Plaintiff failed to meet her burden to establish a *prima facie* case of gender, age or disability discrimination under Title VII, the ADEA or the ADA. Plaintiff failed to provide any evidence sufficient to show any connection between the adverse employment actions alleged and her gender, age or disability, as necessary to support an inference of discriminatory intent because "[i]n the absence of any circumstantial evidence of discriminatory animus[,] . . . the inference that the difference in treatment is attributable in part to discrimination would be based on speculation rather than on evidence or a rational inference." *Campbell*, 93 F. Supp. 3d at 173 (quoting *Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528, 2014 WL 4773975, at *18 (E.D.N.Y. Sept. 24, 2014) and citing *Howard v. City of New York*, 602 F. App'x 545, 548 (2d Cir. 2015) ("In sum, [the plaintiff] has done little more than cite to his alleged mistreatment and ask the court to conclude that 'it must have been related to his race.  This is not sufficient.'")).

With respect to Plaintiff's claims of retaliation for engaging in conduct protected by Title VII, the ADEA and the ADA, the Court determined that Plaintiff did not provide evidence from which a reasonable jury could conclude that there was a causal connection between the adverse actions alleged and Plaintiff's complaints of discrimination, which she argued were protected activities. *Campbell*, 93 F. Supp. 3d at 178 (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("In order to establish the last element of a prima facie case of retaliation, [the plaintiff] must show that the allegedly adverse actions occurred in circumstances from which a reasonable jury could infer retaliatory intent.")). The Court further determined that, even assuming Plaintiff could prove a causal connection, Defendant proffered legitimate non-discriminatory reasons for its actions and Plaintiff's allegations as to retaliatory intent were speculative and vague. *Campbell*, 93 F. Supp. 3d at 178.

Plaintiff also brought claims for "institutional discrimination" and "institutional retaliation," premised on gender, age and disability. The Court determined that Plaintiff presented no evidence as to Defendant's treatment of other members of the relevant protected groups. *Campbell*, 93 F. Supp. 3d at 179 (citing *Sosa v. Rockland Cty. Cmty. Coll.*, No. 04-CV-8722, 2007 WL 1295723, at *4 (S.D.N.Y. May 1, 2007) (rejecting institutional discrimination claim because the plaintiffs failed to produce evidence of widespread animus or pretext, or that showed the defendant's policies functioned impartially or otherwise promoted institutional discrimination), *aff'd sum nom.*, *Sosa v. Rockland Cmty. Coll.*, 302 F. App'x 56 (2d Cir. 2008)).

Plaintiff seeks relief from the judgment and, in substance, reconsideration of the March 26, 2015 Decision, based on four general sets of arguments.[2] Plaintiff alleges that the Court

---

[2] Plaintiff also objects to several purported "errors" the Court made in assessing Defendant's motion for summary judgment. In the March 26, 2015 Decision, the Court explained that it was citing Plaintiff's statement pursuant to Local Rule 56.1 for her legal

erred (1) in failing to address evidence of alleged discovery fraud or abuse by Defendant; (2) in

recounting certain details relating to the factual background of the case; (3) in failing to find

existing issues of fact; and (4) in overlooking controlling law.[3]

As discussed below, none of Plaintiff's arguments — mistake of a party, Defendant's

alleged misconduct or fraud, or extraordinary hardship — provide a basis for relief from the

judgment.  Furthermore, construing Plaintiff's motion as a motion for reconsideration, Plaintiff

has not shown (1) that the Court overlooked critical facts or (2) that the Court overlooked any

---

arguments because Plaintiff did not submit a memorandum of law in opposition to the motion.
*Campbell v. N.Y.C. Transit Auth.*, 93 F. Supp. 3d 148, 163 n.21 (E.D.N.Y. 2015).  Plaintiff
objects to this conclusion, arguing that she did not need to submit a memorandum of law, (Pl.
Mot. 11), but does not dispute that she did not submit a memorandum of law.  The Court did not
err by explaining why it cited to Plaintiff's Rule 56.1 Statement instead of a legal brief.
Similarly, Plaintiff objects to the Court's refusal to reject the affidavit submitted by Cynthia
Davis because, contrary to Plaintiff's claim, it did not contradict Ms. Davis's deposition
testimony.  Plaintiff argues that "genuine issues of material fact exist" as to this issue.  (Pl.
Mot. 4.)  The Court declines to reconsider its determination on this point, and notes that
Plaintiff's general assertion that "issues of fact exist" is insufficient to show that the Court
overlooked any data that would change the Court's decision on this issue.

[3] Plaintiff also objects to several instances where the Court declined to decide whether
the evidence supported Plaintiff's *prima facie* case and instead assumed that Plaintiff *could*
establish those elements.  Plaintiff argues that it was error for the Court to make such
assumptions and contends that there are "issues of fact" as to whether she could establish those
elements that would preclude summary judgment.  (*See, e.g.*, Pl. Mot. 14, 16.)  Plaintiff appears
to misunderstand the standard for deciding a summary judgment motion.  "Only disputes over
facts that might affect the outcome of the suit under the governing law will properly preclude the
entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be
counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Zann Kwan v.
Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("The substantive law governing the case
will identify those facts that are material, and '[o]nly disputes over facts that might affect the
outcome of the suit under the governing law will properly preclude the entry of summary
judgment.'" (alteration in original) (quoting *Anderson*, 477 U.S. at 248)); *Chandok v. Klessig*,
632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of
sufficient proof as to one essential element of a claim, any factual disputes with respect to other
elements become immaterial and cannot defeat a motion for summary judgment.").

relevant controlling decisions. *See Shrader*, 70 F.3d at 257; *Analytical Surveys*, 684 F.3d at 52; *Bey v. City of New York*, No. 13-CV-9103, 2015 WL 5473155, at *1 (S.D.N.Y. Sept. 16, 2015).

### i. Plaintiff has not presented a basis to vacate the judgment pursuant to Rule 60

Plaintiff cannot establish a basis to vacate the judgment pursuant to Rule 60(b)(1), (3) or (6). In the March 26, 2015 Decision, the Court noted that, in her opposition to Defendant's motion for summary judgment, Plaintiff referenced issues regarding the extent of Defendant's disclosures and other discovery disputes. *Campbell*, 93 F. Supp. 3d at 155 n.1 (citing Pl. Aff. ¶¶ 6–8). The Court explained that, by order dated November 6, 2013, Defendant was given a deadline by which to provide all outstanding discovery to Plaintiff and both parties were directed to contact the Court regarding any outstanding discovery disputes. *Id.* The Court determined that "Plaintiff had ample opportunity to raise her discovery disputes during the discovery period, and chose not to raise them with the Court as directed" and thus the Court declined "to entertain [Plaintiff's] allegations that Defendant failed to provide her with all necessary discovery." *Id.*

In seeking to vacate the judgment, Plaintiff argues that the Court erred when it declined to address her discovery disputes, because she was "afraid to ask the court for anything," and further asserts that there was "fraud, discovery abuse, misrepresentation, and misconduct during the entire litigation of this matter." (Pl. Mot. 1, 2.) Specifically, Plaintiff alleges that during the depositions of Saundra Davis, Cynthia Davis and Michael Troina, "interruptions occurred, answers were provided to the witnesses, and unnecessary objections" were raised. (*Id.* at 3 n.5.) Plaintiff argues that Defendant's "misconduct" also included obtaining an "adverse report" from a physician "for the sole purpose to intentionally inflict more psychological harm" upon her. (*Id.* at 3.)

To the extent that Plaintiff seeks to invoke Rule 60(b)(1), she must seek relief from a

final judgment or order arising from the mistake, inadvertence, surprise or excusable neglect "of a party or his representatives," rather than from an alleged mistake of the Court. *Turner*, 594 F. App'x at 25 ("If a party seeks to challenge a decision of the district court . . . on the grounds that it is mistaken or erroneous, there are other rules under which he or she may proceed, most obviously a direct appeal in the Court of Appeals . . . ."). Rather than identify mistakes by Defendant, Plaintiff argues that the Court erred in declining to address her discovery disputes, including the alleged misconduct of Defendant during discovery. Plaintiff has not satisfied the requirements of Rule 60(b)(1).

To obtain relief under Rule 60(b)(3), Plaintiff must "establish[] a material misrepresentation or fraud by 'clear and convincing evidence.'" *ACE Investors*, 561 F. App'x at 117. Plaintiff appears to believe that the conduct of Defendant and various parties during discovery constitutes fraud. She indicates that "[e]vidence will be provided" with respect to her allegations of misconduct during depositions but has not presented any evidence of the alleged misrepresentations or fraud. (*Id.* at 3 n.5.) In the absence of any evidence, let alone "clear and convincing evidence," of a misrepresentation or of fraud by Defendant, Plaintiff fails to establish a basis to vacate the judgment pursuant to Rule 60(b)(3).

As explained above, Plaintiff may only state grounds for vacating the judgment under Rule 60(b)(6) if no other provision of the rule is applicable, as the provisions are "mutually exclusive" and "any conduct which generally falls under" one of the specific grounds "cannot stand as a ground for relief under [Rule 60(b)(6)]." *Stevens*, 676 F.3d at 67 (internal quotation marks and citation omitted). Plaintiff appears to argue that the judgment should be vacated because Defendant engaged in fraud during discovery. While Plaintiff's evidence in support of this argument is insufficient to obtain relief under Rule 60(b)(3), this basis for relief nevertheless

falls within Rule 60(b)(3)'s language addressing fraud, misrepresentation or misconduct by an opposing party and therefore cannot form a basis for relief under Rule 60(b)(6). In addition, Plaintiff fails to demonstrate any "extraordinary circumstances" or "extreme hardship" that would warrant the rare relief available under Rule 60(b)(6). *DeCurtis*, 529 F. App'x at 86.

For these reasons, Plaintiff's motion to vacate the judgment is denied.

### ii. The Court did not overlook important data or factual matters

Plaintiff argues that the Court erred with respect to numerous specific factual matters. In order to succeed on a motion for reconsideration, a moving party must show that a court overlooked factual matters entirely — simply arguing that the discussion of those matters was inadequate will not suffice. *See Moore v. T-Mobile USA, Inc.*, No. 10-CV-527, 2013 WL 55799, at *3 (E.D.N.Y. Jan. 2, 2013) ("The fact that this Court did not find that this particular argument merited discussion should not be misconstrued as evidence that this Court overlooked this argument."); *United States v. N.Y.C. Transit Auth.*, No. 04-CV-4237, 2011 WL 4596155, at *1 (E.D.N.Y. Sept. 30, 2011) (rejecting the movant's argument that the court overlooked undisputed facts in a previous order when the court "expressly rejected the very argument that the [movant] now reiterates" with respect to those facts).

For the reasons explained below, Plaintiff has not demonstrated that the Court overlooked any factual matters relevant to deciding whether to grant Defendant's motion for summary judgment as to all of Plaintiff's claims. Consequently, Plaintiff is not entitled to the "extraordinary remedy" of reconsideration of the Court's March 26, 2015 Decision. *See Stoner*, 2013 WL 2425137, at *1 ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because [a party] is dissatisfied with

the outcome of his case." (alteration in original) (citations and internal quotation marks

omitted)).

### 1. Factual background discrepancies

Plaintiff alleges that there are a number of discrepancies in the Court's recitation of the

facts of the case and argues that these facts are in dispute.  Plaintiff does not appear to argue that

these facts were overlooked by the Court in addressing Defendant's summary judgment motion,

but rather that, because they are disputed, they preclude summary judgment.  These facts were

either addressed by the Court or were irrelevant to the Court's determination.

First, Plaintiff asserts that in footnote six of the March 26, 2015 Decision, the Court

incorrectly states that supervisor Hyppolyte had retired and was therefore unable to provide

deposition testimony.  (Pl. Mot. 5.)  Plaintiff argues that the footnote is incorrect because

Hyppolyte was actually still employed by Defendant.  (*Id*.)  Regardless of whether Hyppolyte

was still employed by Defendant or had retired, Plaintiff did not present the Court with any

deposition testimony from Hyppolyte, a fact which Plaintiff does not dispute.

Second, Plaintiff argues that the Court "misrepresented the facts and excluded facts"

when it stated that Plaintiff was suspended until August 18, 2009.  (Pl. Mot. 7.)  Plaintiff appears

to argue that she was not suspended.  Plaintiff cites to the same portion of her deposition

testimony cited in her original papers and cited by the Court in the March 26, 2015 Decision, (Tr.

of Dep. of Collette Campbell ("Pl. Dep.") 193:19–194:4, annexed to Def. Mot for Summ. J. as

Def. Ex. S), in which Plaintiff responded to a question about whether she returned to work from

suspension on August 18, 2009 by stating that she was on compensation status during that time.

(Pl. Mot. 7.)  In the March 26, 2015 Decision, the Court noted that Plaintiff asserted that her time

out of work during the period of August 12, 2009 through August 18, 2009 may have been later

classified as compensation time. *Campbell*, 93 F. Supp. 3d at 160 n.14. The Court's statement regarding the end date of Plaintiff's suspension did not require the Court to determine whether Plaintiff was later deemed eligible for workers' compensation for those days. Plaintiff's deposition testimony was cited by the Court, and Plaintiff has not identified factual matters that the Court overlooked.

Third, Plaintiff asserts that the Court erroneously concluded that only Daniel F. Brent, the impartial arbitrator, signed the opinion with regard to her disciplinary proceeding and that the decision was signed by all three members of a panel.[4] (Pl. Mot. 8.) Plaintiff argues that as a Level II Supervisor, it was improper for Defendant to use a tri-partite panel for her disciplinary proceeding, a process consistent with the collective bargaining agreement of Level I Supervisors, and the three signatures demonstrate that she was "treated . . . as a Level I Supervisor." (Pl. Mot. 8.) To the extent that Plaintiff is arguing that this evidence supports a claim that she was singled out for retaliatory treatment, there is no evidence in the record that a tri-partite panel was inappropriate or improper "other than [Plaintiff's] own allegations." *Campbell*, 93 F. Supp. 3d at 161 n.17. Moreover, the Court construed this evidence in favor of Plaintiff by assuming that this conduct was an adverse action committed by Defendant. *Campbell*, 93 F. Supp. 3d at 169.

Fourth, Plaintiff also faults the Court for not citing to Defendant's statement to the EEOC that charges for sick leave abuse were issued against fifty Level II Supervisors, rather than fifty supervisors in total, and that only Level II Supervisors were charged with sick leave abuse. (Pl. Mot. 9.) Plaintiff appears to argue that this demonstrates retaliatory conduct by Defendant

---

[4] Plaintiff points to a signature page, one of a voluminous number of documents attached as "miscellaneous" exhibits, which contains the signatures of Mr. Brent, the Transit Authority's representative, and Plaintiff's union representative. (Pl. Mot. 8; *see* Docket Entry No. 75-3 1026–29, 1221–22.)

against her, a Level II Supervisor. (*Id.*) While the record does not indicate how investigations against peer supervisors demonstrate retaliatory conduct against Plaintiff, as explained above, the Court nevertheless construed this evidence in Plaintiff's favor by assuming that the sick leave investigation could be an adverse action by Defendant. *Campbell*, 93 F. Supp. 3d at 170.

These factual matters were all before the Court on the underlying summary judgment motion and were considered by the Court. Plaintiff has not shown that any of these factual discrepancies had any impact, much less a material impact, on the Court's determination. None of these are facts that "might have reasonably altered the result before the court." *Henderson*, 2011 WL 5513228 at *1. Thus, Plaintiff's motion is denied to the extent she seeks reconsideration on the grounds that the March 26, 2015 Decision contained discrepancies in stating the facts of the case.

### 2. Hostile work environment claims

As explained in the March 26, 2015 Decision, the Court reviewed all of the evidence presented with respect to Plaintiff's hostile work environment claims asserted under Title VII and the ADEA. *See Campbell*, 93 F. Supp. 3d at 163–65. Plaintiff broadly alleged that Defendant created a work environment hostile to Plaintiff on the basis of her age and sex, but only offered evidence about Davenport's conduct in March of 2009 and on August 6, 2009, specifically that he commented on the color of her hair as being gray and called her a "bitch." *Id*. The Court determined that Plaintiff had not established a hostile work environment under either statute because these two isolated incidents were insufficient evidence from which a jury could infer that her work environment was objectively hostile. *Campbell*, 93 F. Supp. 3d at 165 (citing *Ugactz*, 2013 WL 1232355, at *18 ("Plaintiff has not presented any evidence from which a jury could infer that his work environment was objectively hostile, let alone permeated with

any age or disability discriminatory animus.") and *Stofsky v. Pawling Cent. Sch. Dist.*, 635

F. Supp. 2d 272, 293 (S.D.N.Y. 2009) (finding that the plaintiff "introduced *no* evidence of any

gender-related or age-related comments made or actions taken by any District administrator or

co-worker," with the exception of a few comments as to the plaintiff's age on unspecified

occasions, which "would not be sufficient to survive summary judgment" (citation omitted))).

Plaintiff argues that the Court erred in noting that Plaintiff's account of the March 2009

incident referencing her gray hair was related to her management style and contends that her

statement was not "conclusive" and that "evidence is in the record" apparently to support her

claim of a hostile work environment based on age.[5]  (Pl. Mot. 11–12.)  In footnote twenty-two of

the March 26, 2015 Decision, the Court noted that "Plaintiff's own account of the March 2009

incident indicates that the reference to the color of her hair was not related to her age, but rather

to the way she supervised the cleaners at the station."  *Campbell*, 93 F. Supp. 3d at 165 n.22.

The Court reached this conclusion based on Plaintiff's account of the circumstances under which

this statement was made by Davenport.  However, the Court concluded that Plaintiff's evidence

— Davenport's comment on the color of her hair and calling her a "bitch" — was insufficient "to

demonstrate that the incident was related to her sex or age" and insufficient to establish a hostile

work environment.  *Campbell*, 93 F. Supp. 3d at 165.  Plaintiff does nothing more than disagree

---

[5]  Plaintiff further objects to the Court's note that at oral argument, when given an opportunity to present any additional evidence not presented in her written submission, Plaintiff provided no additional evidence to support her claim of a hostile work environment.  (Pl. Mot. 12.)  Plaintiff argues that she only had "short notice to review her files" before oral argument, she was "not prepared" and she was "not given a fair opportunity to present her side."  (*Id.* at 11 n.14; 12 n.15.)  Plaintiff's argument is contradicted by the record.  The record indicates that on March 11, 2015, the oral argument lasted for approximately seventy minutes, almost the entirety of which consisted of exchanges between Plaintiff and the Court reviewing the bases for her claims.  (Mar. 11, 2015 Oral Arg. Tr.)  In addition to being meritless, Plaintiff's allegation of procedural unfairness is not a basis for reconsideration.

with the Court's outcome and is attempting to "relitigat[e] old issues," which is not a basis for reconsideration. *See Analytical Surveys*, 684 F.3d at 52. The Court declines to reconsider its determination that Plaintiff did not establish a hostile work environment claim.

### 3. Title VII, ADA, and ADEA discrimination claims

As explained in the March 26, 2015 Decision, the Court reviewed all of the evidence with respect to Plaintiff's discrimination claims asserted under Title VII, the ADA and the ADEA. The Court determined that Plaintiff failed to meet her burden to establish a *prima facie* case of gender, age or disability discrimination under Title VII, the ADEA and the ADA because she could not show any connection between the alleged adverse employment actions and her gender, age or disability, as required to support an inference of discriminatory intent.[6] *Campbell*, 93 F. Supp. 3d at 173.

---

[6] As set forth in the March 26, 2015 Decision, claims of employment discrimination under Title VII, the ADA and the ADEA are assessed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the framework, a plaintiff must first establish a *prima facie* case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *see also Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). To establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must show that: (1) she belongs to a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under "circumstances giving rise to an inference of gender discrimination." *Mills v. S. Conn. State Univ.*, 519 F. App'x 73, 75 (2d Cir. 2013); *see also Doe v. City of New York*, 473 F. App'x 24, 27 (2d Cir. 2012). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010) (citations omitted); *see also Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 48–49 (2d Cir. 2014) (outlining requirements for *prima facie* case under the ADA). To meet her initial burden and establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must demonstrate "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp*, 596 F.3d 93, 107 (2d Cir. 2010).

## A. Protected group and qualification

Plaintiff argues that the Court erred in not reaching a decision on whether she suffered from a disability or whether Defendant was covered by the ADA, instead assuming that Plaintiff could prove these two prongs of her *prima facie* case.[7]  (Pl. Mot. 12–13.)  Plaintiff argues that "genuine issues of material fact exist" as to both of these issues, which should have prevented the Court from granting summary judgment to Defendant.  (*Id*. at 12–13.)

In the March 26, 2015 Decision, the Court assumed that Plaintiff *could* establish that she suffered from, or was regarded as suffering from, a disability at the time of the adverse actions.

---

[7]  In noting in the March 26, 2015 Decision that it was questionable whether Plaintiff sufficiently showed she had or was regarded as having a disability, a necessary element of a *prima facie* case of her ADA claim, the Court cited *Cody v. Cty. of Nassau*, 345 F. App'x 717, 719 (2d Cir. 2009), which applied the "severely restricts" standard that was eliminated in subsequent amendments to the ADA.  *Campbell*, 93 F. Supp. 3d at 168 n.25.  Recent amendments to the ADA prospectively imposed a revised definition of disability.  EEOC regulations promulgated after the ADA Amendment Act of 2008 redefined what it means for a disability to "substantially limit" a major life activity.  *See Horsham v. Fresh Direct*, No. 14-CV-651, 2015 WL 5692908, at *5 (E.D.N.Y. Sept. 28, 2015) (explaining that major life activities include standing, lifting, bending, speaking, and working (citing 42 U.S.C. § 12102(2)(A))).  Under the EEOC's regulations, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA' and 'is not meant to be a demanding standard.'" *Id*. (citing *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(i))).  While an impairment does not need to "prevent or significantly or severely restrict" the plaintiff from engaging in a major life activity, "not every impairment will constitute a disability" within the meaning of the ADA.  29 C.F.R. § 1630.2(j)(1)(ii) (April 2012); *see also Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 135 (E.D.N.Y. 2015).

The Court acknowledges that Plaintiff was out of work for a period of time, and as working is a "major life activity," it is possible that Plaintiff was disabled for the period of time in which she was unable to work.  *See Villanti v. Cold Spring Harbor Cent. Sch. Dist.*, 733 F. Supp. 2d 371, 378 (E.D.N.Y. 2010) ("[T]here is no doubt that working is a major life activity.").  However, it is unclear what duration or scale of limitations on her ability to work Plaintiff would need to show to prove she was disabled for that period.  *See Missick v. City of New York*, 707 F. Supp. 2d 336, 353 n.9 (E.D.N.Y. 2010) (stating that doctor's note stating plaintiff should only do "limited work" and not get "stressed out" was insufficient to show disability).  However, given the Court's assumption that Plaintiff could prove that she was disabled, this determination is not a basis to reconsider the March 26, 2015 Decision.

*Campbell*, 93 F. Supp. 3d at 168. Similarly, the Court assumed that Defendant is covered under the ADA. *Id*. at 167. In making both of these assumptions, the Court did not require Plaintiff to prove these two prongs of her ADA claim. The Court determined, nevertheless, that because Plaintiff could not raise an inference of discrimination that her disability or perceived disability was at least a motivating factor for the alleged adverse actions by Defendant, her claim failed at the *prima facie* stage.

Plaintiff's arguments that the Court should not have assumed that she was disabled and that the Defendant was covered by the ADA are not a grounds for reconsideration. Plaintiff seems to believe that, had the Court found that there were triable issues of fact as to whether she was disabled or perceived as such, or as to whether Defendant was covered by the ADA, the Court would have been precluded from granting summary judgment. Plaintiff is mistaken. Even if the Court had instead held that the jury had to decide factual issues as to these two prongs, the Court would have granted summary judgment because the Court determined that Plaintiff could not establish one of the four prongs necessary to make out her *prima facie* case. Plaintiff fails to present any basis for the Court to reconsider its determination that Plaintiff is unable to meet her burden to establish to a *prima facie* discrimination claim.

### B.  Adverse actions

Plaintiff argues that the Court erred with respect to several facts in support of alleged adverse actions resulting from her gender, disability and age discrimination. Specifically, Plaintiff argues that (1) the Court should have found that Plaintiff being held out of service was an adverse action and that Gregg delayed before taking her to the hospital; (2) the Court's legal conclusion that Defendant's objection to her workers' compensation benefits was not an adverse action because she received full benefits is wrong because the evidence shows that Defendant did

object; and (3) the Court's conclusion that there was insufficient evidence from which a reasonable jury could conclude she was constructively discharged is wrong because of Defendant's response to a notice to admit. The Court addresses each argument below.

### (1) Being held out of service

Plaintiff objects to footnote eight in the recitation of facts section of the March 26, 2015 Decision, which states that, "Plaintiff asserts that Gregg held her out of service only after Plaintiff reported the incident with Davenport and requested medical attention." (Pl. Mot. 5.) Plaintiff argues that the Court erred in not finding this to be true instead of stating it as an assertion by Plaintiff because there is evidence is in the record that supports that she reported the incident first and was held out service latter.[8] (*Id.*) The Court did not overlook these facts as they are specifically noted in the March 26, 2015 Decision. The Court construed these facts in Plaintiff's favor when it determined that a reasonable jury *could* conclude that Plaintiff's removal from work on August 7, 2009 — being "held out of service" by Gregg — constituted an adverse employment action. *Campbell*, 93 F. Supp. 3d at 169. Plaintiff has not presented a basis for reconsideration.

### (2) Plaintiff's workers' compensation benefits

Plaintiff argued at summary judgment that Defendant improperly "controverted" her workers' compensation claim and provided the Workers' Compensation Board "with distorted, falsified information" and that these actions constituted adverse actions. *Campbell*, 93 F. Supp. 3d at 161 n.18. In the March 26, 2015 Decision, the Court concluded that no reasonable jury

---

[8] Plaintiff also objects to footnote ten in the March 26, 2015 Decision, which states that "Plaintiff contends that Gregg delayed in taking her to the hospital," and argues that the Court failed to cite to the evidence in the record which supports her contention. (Pl. Mot. 5–6.) This allegation was not relevant to the Court's decision.

could find this conduct to be an adverse employment action because, as Plaintiff conceded, she

was paid workers' compensation benefits in full and thus the decision to controvert her workers'

compensation claim did not result in a material loss of benefits. *Id*. at 170; *see also Adams*, 560

F. App'x at 49.

In seeking reconsideration, Plaintiff reiterates the argument she made in opposition to the

summary judgment motion, that Defendant "improperly controverted" her workers'

compensation claim, and cites to numerous documents in the record, to support the fact that

Defendant did challenge her workers' compensation claim. (Pl. Mot. 9; Docket Entry No. 75-3

at ECF 700–08, 848–75.) Plaintiff generally asserts that the evidence supports her allegation that

Defendant improperly opposed her claim. The Court accepted this fact, but determined that the

issue was whether or not Plaintiff received her benefits not whether Defendant opposed them.

The Court ruled that Defendant's opposition to Plaintiff's claim is not in and of itself an adverse

action because, despite Defendant's opposition, Plaintiff received her workers' compensation

benefits in full. *Campbell*, 93 F. Supp. 3d at 170; *see also Caskey v. Cty. of Ontario*, 560

F. App'x 57, 58–59 (2d Cir. 2014) (explaining that to satisfy the "adverse employment action"

requirement, a plaintiff must show "a materially adverse change in the terms and conditions of

employment" with a tangible effect such as "termination of employment, a demotion evidenced

by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities . . . "); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir.

2012) (explaining that such action must be "more disruptive than a mere inconvenience"

(citation omitted)); *Miller v. N.Y.C. Health & Hosp. Corp.*, No. 00-CV-140, 2005 WL 2022016,

at *6 (S.D.N.Y. Aug. 22, 2005) (finding that a plaintiff failed to show that a workers'

compensation payment delayed by several months but ultimately paid was "anything more than a

mere inconvenience" and thus not an adverse action), *aff'd sub nom.*, *Miller v. N.Y.C. Health & Hosps. Corp.*, 198 F. App'x 87 (2d Cir. 2006).

Reconsideration is not "an occasion for repeating old arguments." *Simon*, 18 F. Supp. 3d at 425 (citation and internal quotation marks omitted). The Court did not overlook Plaintiff's argument or dispute Plaintiff's facts about Defendant's challenge to her workers' compensation claim. The Court simply rejected Plaintiff's argument that Defendant's opposition to her workers' compensation benefits is an adverse action. *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) ("The Court did not overlook this argument; it rejected it."). Plaintiff's disagreement with the Court's decision is a basis for an appeal of the decision but not for reconsideration by the Court.

### (3)   Constructive discharge

Plaintiff argued at summary judgment that her retirement was not voluntary and instead was a constructive discharge. In the March 26, 2015 Decision, the Court determined that Plaintiff failed to demonstrate that a reasonable person in her position would have felt compelled to resign and therefore, a reasonable jury could not find that her retirement was a constructive discharge. *Campbell*, 93 F. Supp. 3d at 171. In seeking reconsideration, Plaintiff argues that genuine issues of material fact exist as to Plaintiff's alleged constructive discharge because in response to Plaintiff's Request for Admission No. 108, "Admit the fact that the plaintiff was a Station Supervisor Level II from 1986 until her involuntary retirement, constructive discharge effective on August 29, 2011," (Request for Admission No. 108, Docket Entry No. 75-2, at ECF No. 91), Defendant stated "Admit," (Response to Request for Admission No. 108, Docket Entry No. 88-2, at ECF No. 18). (Pl. Mot. 13–14.)

Rather than overlook this fact, the Court discussed it in footnote twenty-six of the March

26, 2015 Decision. *Campbell*, 93 F. Supp. 3d at 168 n.26. The Court explained that Defendant

otherwise denied that Plaintiff was constrictively discharged, and the Court declined to deem

Defendant's response to the question about her supervisory level to be dispositive of the issue as

to whether Plaintiff was constructively discharged. *Id*. Looking at all of the evidence, the Court

determined that Defendant's statement in its Response to Plaintiff's Request for Admission is

insufficient evidence from which a reasonable jury could conclude Plaintiff was constructively

discharged. *Id*. Plaintiff does not bring to the Court's attention any facts that the Court

overlooked, and has not identified further evidence in the record that would support a conclusion

that Defendant made her workplace conditions so difficult or unpleasant that Plaintiff felt

compelled to resign. Plaintiff disagrees with the Court's conclusion, but such disagreement is

not a basis for the Court to reconsider its determination.

### C. Inference of bias or discrimination

As explained in the March 26, 2015 Decision, the Court reviewed the record and

determined that Plaintiff failed to present evidence that could demonstrate any connection

between any adverse action and her gender, age or disability sufficient to raise an inference of

discrimination. *Campbell*, 93 F. Supp. 3d at 172. Plaintiff argued at summary judgment, among

other things, that she and Davenport, a younger man, were similarly situated and were not

disciplined in a similar manner following the August 6, 2009 incident. *Id*. The Court declined to

decide whether Davenport, Plaintiff's subordinate, was similarly-situated to Plaintiff but

determined that the record did not support Plaintiff's claim of dissimilar treatment and instead

showed that Plaintiff and Davenport were treated similarly after the incident and that the

outcome of the disciplinary charges did not support an inference of discrimination. *Campbell*, 93

F. Supp. 3d at 172–73.

In seeking reconsideration, Plaintiff argues that the record contains evidence that she was treated differently from Davenport, including the fact that she was suspended while on "comp" status. (Pl. Mot. 6.) Plaintiff also contests the Court's description of how Defendant resolved Davenport's disciplinary proceedings without Plaintiff's testimony, citing generally the March 11, 2015 oral argument transcript. (*Id*. at 7.) Plaintiff further argues that the Court erred in declining to decide whether Davenport was similarly-situated to Plaintiff because issues of fact exist and "[a] decision is essential." (*Id*. at 15.)

Plaintiff has not shown that the Court overlooked any facts or controlling decisions. Rather, Plaintiff disagrees with the Court's conclusion that the undisputed evidence does not support her contention that Davenport was treated more favorably than she was and instead shows that they were treated similarly — both were held out of service the first day, both suspended pending investigation of the incident, and both brought up on disciplinary charges resulting in Davenport's suspension for six weeks after his charges were sustained, while Plaintiff's charges were dismissed.[9] Plaintiff fails to identify specific facts overlooked by the Court that would alter the Court's conclusion that Plaintiff failed to show a connection between her removal from service or suspension and her gender, age, or disability. Plaintiff's disagreement and dissatisfaction with the Court's conclusion is not a basis for reconsideration. *See Stoner*, 2013 WL 2425137 at *1 ("[T]his Court will not reconsider issues already examined simply because a party is dissatisfied with the outcome of his case.).

---

[9] Plaintiff may also be asserting that the Court would be precluded from granting summary judgment if it were to find that there were issues of fact as to Plaintiff's and Davenport's positions, because a jury would need to decide the issue. Plaintiff is mistaken. Even if there is an issue of fact as to whether Plaintiff and Davenport are similarly situated, she fails to demonstrate any inference of discrimination as to their treatment because the record, construing all facts in Plaintiff's favor, shows they were not treated differently.

#### 4.    Retaliation claims

As explained in the March 26, 2015 Decision, the Court reviewed all the evidence with respect to Plaintiff's retaliation claims asserted under Title VII, the ADA and the ADEA. The Court determined that Plaintiff failed to meet her burden to establish a *prima facie* case of gender, age or disability discrimination under Title VII, the ADEA or the ADA because, even assuming Plaintiff could show that she suffered a materially adverse action, she could not show any causal connection between the alleged protected activity and any alleged adverse action. *Campbell*, 93 F. Supp. 3d at 178. The Court further found that even assuming Plaintiff could establish a *prima facie* case, Defendant proffered legitimate, non-discriminatory reasons for the various actions, and Plaintiff failed to show pretext. *Id*.

### A.    *Prima facie* case

Plaintiff argued at summary judgment that that she suffered various incidents of retaliation following the August 6, 2009 incident with Davenport, including disciplinary charges, her suspension and the recommendation that she be terminated, among other actions. *Id*. at 176. As explained in the March 26, 2015 Decision, assuming without deciding that Plaintiff's alleged adverse actions were in fact adverse actions, she failed to show that any of the alleged adverse actions were taken in retaliation for her complaints relating to her gender, age or disability. *Id*. at 178.

In seeking reconsideration, Plaintiff argues that "evidence in the record sufficiently shows the impact" of Plaintiff's suspension on her employment and that issues of fact exist as to whether it was adverse.[10] (Pl. Mot. 14.) Plaintiff further argues that the Court erred in not

---

[10]    Plaintiff also argues that there is an issue of fact as to whether she was required to bring a doctor's note to her meeting with Cynthia Davis on August 12, 2009, and argues that Defendant failed to follow its own procedure on that point. (Pl. Mot. 6–7, 9–10.)

deciding whether the investigation into the August 6, 2009 incident itself was sufficient to establish an adverse employment action, because she was suspended for several days. Plaintiff alleges that there are issues of fact but does not elaborate. (*Id*. at 15–16.) Plaintiff fails to grasp that the Court assumed that each of the alleged adverse actions, including the investigation and her suspension, were adverse actions in deciding whether Plaintiff could establish a *prima facie* case. *Campbell*, 93 F. Supp. 3d at 177.

Plaintiff also argues that issues of material fact exist as to whether her transfer from Utica Station, in response to her complaints about her working conditions following the incident with Davenport, was retaliatory. (Pl. Mot. 15.) The Court acknowledged in footnote twenty nine of the March 26, 2015 Decision that, while a lateral transfer could constitute an adverse employment action, the evidence indicated that Plaintiff was transferred at her own request that she no longer work with Davenport. *Campbell*, 93 F. Supp. 3d at 176 n.29. At summary judgment, Plaintiff presented no evidence as to why this transfer was adverse, and in her current motion, Plaintiff does not elaborate as to what factual matters the Court overlooked.

The Court assumed that a reasonable jury *could* conclude that Plaintiff could establish the alleged adverse actions. Even if Plaintiff identified issues of fact as to whether these actions were adverse, the Court nevertheless concluded that Plaintiff was unable to show a *prima facie* case of retaliation because she could not show that the alleged adverse actions were in retaliation for any complaints by Plaintiff relating to her gender, age or disability. *Id*. at 177–78. For this reason, granting reconsideration could not "reasonably be expected to alter the conclusion reached by the court." *Smith*, 524 F. App'x at 734 (internal quotation marks and citation omitted). The Court concluded that Plaintiff could not demonstrate a *prima facie* of retaliatory conduct by Defendant, and Plaintiff has not provided a basis to reconsider this determination.

## B. Pretext

In deciding the summary judgment motion, the Court determined that, beyond vague and conclusory allegations, Plaintiff did not provide any facts to demonstrate that retaliatory motive played any role in Defendant's actions and therefore the Court dismissed Plaintiff's retaliation claims under the Title VII, ADA and the ADEA. *Campbell*, 93 F. Supp. 3d at 179. In recounting the factual background of the case, the Court stated in the March 26, 2015 Decision that Defendant conducted an investigation into chronic sick leave abuse by subway supervisors and cited to Denise Washington's affidavit. *Id*. at 162.

Plaintiff argues in support of her motion for reconsideration that there is evidence in the record to show that Defendant's reason for "writ[ing]-up" Plaintiff for sick leave abuse is pretext, (Pl. Mot. 4), relying on timekeeping records. (Def. Ex. R, annexed to Def. Mot. for Summ. J., Docket Entry No. 80-19; Pl. Confidential Ex. at TA-2–TA-6, Docket Entry No. 75-4.) Plaintiff argues that these records do not show any absence by her of thirty consecutive days' duration, demonstrating "pretext."[11] (Pl. Mot. 10.) Plaintiff argued at summary judgment that because Defendant's manual states that Defendant will "[r]eview sick leave absences of more than thirty (30) days duration," other methods for controlling chronic sick leave usage, including "[m]onitoring for patterns of fraud and/or abuse," cannot include monitoring for absences if the

---

[11] Plaintiff also points to a document that indicates that Defendant will "review sick leave absences of more than thirty (30) days' duration" and will monitor for "patterns of fraud and/or abuse," (Docket Entry No. 88-1 at ECF No. 1889), a letter from defense counsel to the EEOC indicating that Plaintiff was among the supervisors investigated for attendance and sick leave usage, (Docket Entry No. 75-2 at ECF No. 924–26), part of the deposition of Michael Troina, who testified that the chronic absenteeism policy is not defined in the collective bargaining agreement but would be a "serious violation" under the agreement, (Docket Entry No. 75-3 at ECF No. 962), and pages from Cynthia Davis's deposition where she explains that chronic absenteeism includes "a pattern or an amount of excessive sick usage within a time period . . . [which] is subject to discipline," (Docket Entry No. 75-2 at ECF No. 775).

thirty days are not thirty consecutive days. (Docket Entry No. 88-1, at ECF No. 1889.) Plaintiff also argues, both at summary judgment and in her reconsideration motion, that she "objects to the affidavit of Denise Washington because it does not support Defendant's motion for summary judgment" in that it recounts actions by Defendant that Plaintiff contests are inconsistent with Defendant's policies regarding sick leave. (Pl. Mot. 4; Pl. Aff. ¶ 5.)

In the March 26, 2015 Decision, the Court assumed without deciding that, as to Plaintiff's retaliation claims, the chronic absenteeism charge against Plaintiff resulting from Defendant's investigation into sick leave abuse was an adverse action. *Campbell*, 93 F. Supp. 3d at 176–77. The Court also assumed that Plaintiff could prove a causal connection between an adverse action and her alleged protected activities, but determined that Plaintiff could not prove that retaliatory intent was even a "motivating factor" in Defendant's actions against her. *Id*. at 178 (citing *Sherman v. Cty. of Suffolk*, 71 F. Supp. 3d 322, 353 (E.D.N.Y. 2014) (noting it is unclear whether plaintiff needed to show a "motivating factor" or "but-for" causation to establish ADA retaliation claim)).

Plaintiff disagrees with the Court's determination that her allegations of inconsistency between Defendant's actions and its sick leave policy do not demonstrate that the charges against her for sick leave abuse were motivated by retaliatory intent. While Plaintiff cites to documents not specifically referenced in the March 26, 2015 Decision, the Court has already considered and rejected Plaintiff's arguments as unpersuasive. *Id*.; *see also Moore v. T-Mobile USA, Inc.*, No. 10-CV-527, 2013 WL 55799, at *3 (E.D.N.Y. Jan. 2, 2013) ("The fact that this Court did not find that this particular argument merited discussion should not be misconstrued as evidence that this Court overlooked this argument."). Plaintiff has not shown that the Court overlooked any facts that could support a basis for the court to reconsider its decision.

### iii. The Court did not overlook controlling law

In the March 26, 2015 Decision, the Court determined that Defendant had proffered "a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory." *Id*. at 174 (quoting *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (citations omitted)); *see also Tepperwien v. Entergy Nuclear Operations, Inc*., 663 F.3d 556, 568 n.6 (2d Cir. 2011) (discussing the burden shifting analysis in retaliation context). The Court determined that, for the purposes of Plaintiff's retaliation claims, Defendant sufficiently articulated reasons for the various actions claimed by Plaintiff to be the product of discrimination. *Campbell*, 93 F. Supp. 3d at 178. The Court identified attempts by Defendant to resolve the credibility issue between Davenport and Plaintiff through the uniform and impartial application of Defendant's disciplinary procedures, evidence of Plaintiff's actual excessive absenteeism, and a stated belief that Plaintiff was not entitled to workers' compensation as a result of her alleged injury. *Id*.

In seeking reconsideration, Plaintiff cites a decision that she appears to argue is controlling law that was not followed by the Court. Plaintiff argues that Defendant implemented a new standard for sick leave use without warning employees, citing *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313 (1981), and appears to argue that this case provides support for her contentions that actions by Defendant — including discipline against her for chronic absenteeism and the "conversion" of her workers' compensation claim — were adverse and that Defendant has not provided legitimate non-retaliatory reasons for these actions. (Pl. Mot. 17.) The decision identified by Plaintiff was issued by the Merit System Protection Board ("MSPB"), an independent federal agency with responsibilities that include providing administrative review of employment determinations for federal executive employees. *See* 5 U.S.C. § 1204; *Harrison v.*

*Bowen*, 815 F.2d 1505, 1509 (D.C. Cir. 1987) ("The MSPB, an independent agency consisting of three members, is charged with protecting the merit system principles and adjudicating conflicts between federal workers and their employing agencies." (quoting *Frazier v. Merit Sys. Prot. Bd.,* 672 F.2d 150, 154 (D.C. Cir. 1982)). The MSPB's decisions are actions of the executive branch of the federal government, not decisions by the federal judiciary, and are therefore not controlling law for the Court. *See Kuretski v. C.I.R.*, 755 F.3d 929, 943–44 (D.C. Cir. 2014) (citing *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 773 (2002) (Breyer, J., dissenting on other grounds) (noting that "[c]onstitutionally speaking, an 'independent' agency belongs neither to the Legislative Branch nor to the Judicial Branch of Government," and that "even 'independent' agencies[ ] are more appropriately considered to be part of the Executive Branch" (alteration in original))), *cert. denied*, 135 S. Ct. 2309 (2015). To the extent that the decision in *Douglas* identifies factors for reviewing adverse actions by managers in federal agencies, the MSPB articulates law that is neither relevant nor controlling to the issues before the Court.

Plaintiff has failed to provide any controlling law that the Court overlooked that would render even a disciplinary charge that Plaintiff could show was not in compliance with Defendant's announced procedures discriminatory or retaliatory. As such, the Court denies Plaintiff's request to reconsider its determination that the Defendant has presented non-retaliatory reasons for its actions. Plaintiff's motion to reconsider on the basis that the Court overlooked controlling law is denied.

### III.  Conclusion

For the foregoing reasons, the Court denies Plaintiff's motion for reconsideration.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: November 23, 2015
        Brooklyn, New York